979 P.2d 1059

STATE of Hawai'i, Plaintiff–Appellee,

v.

Chad Everett VANSTORY aka Viking, Defendant–Appellant.

No. 21630.

Supreme Court of Hawai'i.

June 30, 1999.

Keith S. Shigetomi, on the briefs, for defendant-appellant.

Simone C. Polak, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Defendant-appellant Chad Everrett Vanstory appeals his guilty convictions of and sentences for (1) robbery in the first degree in violation of Hawai'i Revised Statutes

(HRS) § 708–840 (1993), (2) carrying or use of firearm in the commission of a separate felony in violation of HRS § 134–6(a) (Supp. 1994), (3) felon in possession of a firearm in violation of HRS § 134–7(b) (Supp.1994), and (4) felon in possession of firearm ammunition in. violation of HRS § 134–7(b) (Supp.1994). Vanstory contends that: (1) the trial court's failure to define semiautomatic firearm warrants reversal of his convictions; and (2) the sentencing court erroneously imposed a mandatory minimum term of imprisonment on the basis of semiautomatic weapon in derogation of *Garringer v. State*, 80 Hawai'i 327, 909 P.2d 1142 (1996). Additionally, the prosecution concedes that Vanstory's conviction of carrying or use of firearm in the commission of a separate felony, under HRS § 134–6(a), must be reversed pursuant to *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998).

Although the trial court failed to instruct the jury on the definition of "semiautomatic firearm," this failure did not affect prejudicially Vanstory's guilty convictions under HRS §§ 708–840, 134–6(a), or 134–7(b). However, the failure requires this court to vacate the imposition of the mandatory minimum sentence. We agree with the prosecution that *Jumila* is implicated; however, we must reverse Vanstory's conviction under HRS § 708–840. Finally, we affirm Vanstory's conviction of felon in possession of firearm ammunition under HRS § 134–7(b).

Pursuant to the procedure established in *Garringer v. State*, 80 Hawai'i 327, 909 P.2d 1142 (1996), we will withhold judgment on Vanstory's convictions under HRS §§ 134–6(a) and 134–7(b) for thirty days. If the prosecution, within that time, consents to resentencing without the mandatory minimum for the use of a semiautomatic under HRS § 706–660.1(3), we will affirm the convictions and remand for resentencing. If the prosecution does not consent, we will vacate the convictions under HRS §§ 134–6(a) and 134–7(b) and remand for retrial.

## I. BACKGROUND

On December 31, 1996, at approximately 12:50 p.m., two individuals robbed the Bank of Hawaii, Kahana Branch, on Maui. Remy Phanphongsa, a senior teller, witnessed a person in all black, with a mask, jump over the counter, take money from her drawer, check other areas behind the counter, and leave. Meanwhile, another person, wearing a hooded, "white" sweater or sweatshirt and a mask, was holding a gun, standing by the entrance, and demanding that everyone get down.

Ann Neizman, the service manager of the bank, was in the bank's lunch room when she heard loud noises. She came out of the lunch room and saw a person with a "gray," hooded sweatshirt pointing a gun at her and saying, "Get down on the floor now." Neizman testified that another person in black ran from behind the teller's counter. According to Neizman, $19,000.00 was taken. Another teller, Virgincita Vicklun, testified that a person in black jumped over her counter and took money from her drawer, while the person in the "white" sweatshirt pointed a gun and cursed. Vicklun testified that the gun was a revolver, but later conceded that she did not know much about handguns.

Michael Monett, a bank customer, heard someone yell, "Get down on the ground." Monett turned and saw a person dressed in "white" with a mask. According to Monett, the person was pointing a small semiautomatic pistol towards him. Monett also testified that he knew the difference between a semiautomatic weapon and a revolver.

According to several witnesses, the two men ran from the bank and towards Roy's Restaurant near the Royal Kahana. Valmine Lincoln, an employee of Maui Disposal, was picking up refuse at the Royal Kahana. He saw two joggers, one in black sweats and the other in a white sweatshirt with black sweatpants, exiting from the parking entrance. The two men returned approximately five minutes later. Lincoln did not see the face of the man in black, but he witnessed the man in black removing surgical gloves. The man in white had short, blonde hair and wore a silver stud in his tongue and rings in his nose. The men drove away in a black Nissan Sentra. Casey Kauai, also working for Maui Disposal, saw two men walk from the parking lot, return shortly thereafter, and leave

in a black Nissan Sentra. Kauai did not see their faces.

Max Kincaid, a detective with the Maui Police Department (MPD), was assigned to investigate the Kahana branch robbery. Because none of the many witnesses got a clear look at the robbers' faces, the case remained unsolved until a suspect, Scott Tempkins, was picked up in connection with a jewelry store robbery on August 5, 1997. Tempkins cooperated in the jewelry store robbery investigation by giving the police names of other people involved. Although Tempkins was not a suspect for the Kahana branch robbery, Tempkins also informed the police, on August 17, 1997, about the Kahana branch robbery and implicated himself, Norman Kaui, and Vanstory.[1] Pursuant to a search warrant executed on August 22, 1997, Detective Kincaid searched the Highway 30 Tattoo Parlor, which Vanstory owns. Karl Freitas, an MPD detective, searched Vanstory's home. Detective Kincaid recovered evidence of Vanstory's relationship with Tempkins, and Detective Freitas recovered two rounds of .45 caliber ammunition and two spent shells of .38 caliber ammunition in a hallway closet in Vanstory's home.

Detective Kincaid contacted Lincoln and Casey Kauai for a lineup. Lincoln identified Vanstory as the man wearing the white sweatshirt. Kauai explained that he saw three men, two Caucasians and one "Oriental." At trial, Lincoln identified Vanstory as the man wearing the white sweatshirt. He also recognized a photo of a Nissan Sentra, registered to Debbie Steerman (Vanstory's then fiancé), as the car that he saw.

According to Tempkins, he planned the robbery with Norman Kaui, and, approximately two weeks before December 31, 1996, Tempkins discussed the robbery with Vanstory. The day of December 31, 1996 was chosen as the robbery date because Vanstory was getting married on that day and Tempkins was leaving on a trip two days later, providing good alibis for both Vanstory and Tempkins. The night before the robbery,

Vanstory and Tempkins drove over the planned route and decided that they would call in a bomb threat to Cannery Mall as a diversion for the police.

According to Tempkins, he picked up Vanstory at the home of Vanstory and Debbie Steerman (Debbie), just before noon on the day of the wedding. Tempkins testified that he saw several people in the house preparing for the wedding. According to Tempkins, Vanstory loaded a .32 caliber automatic gun. Tempkins put on black pants and a black sweatshirt; Vanstory put on a white sweatshirt. They left the house in Debbie's black Nissan Sentra. They stopped to call in the bomb threat and proceeded to park at the Royal Kahana. The two men left the Kahana on foot, passed a couple of garbage men, and made their way to the bank. According to Tempkins, at the bank, Vanstory yelled, "This is a stick up. Everybody hit the ... floor." Meanwhile, Tempkins "jumped over the counter to [his] left [and] began emptying tills." When Vanstory indicated that it was time to go, the two men left the bank and ran back to the Kahana garage. Vanstory and Tempkins sped away in Debbie's Nissan Sentra, and they returned to Vanstory's house and divided the money. Tempkins buried some of the money and gave $1,000 to Kaui. Vanstory got married that afternoon.

Apparently because of the counts of felon and/or fugitive in possession of firearm and/or firearm ammunition contained in Cr. No. 97-0706, Vanstory stipulated on March 24, 1998, as a part of his trial strategy, to having been convicted of felonies in the states of Maryland and Tennessee and to being a fugitive from justice in the state of Delaware.

Debbie testified that she used her mother's van on the day of the wedding, while Vanstory used her black Nissan Sentra. Several witnesses testified that Vanstory had a stud in his tongue at the time of the wedding. Vanstory and several witnesses called by Vanstory testified that Vanstory was never

---

1. Tempkins was indicted on federal and state charges of robbery in the first degree. He pled guilty to robbery in the second degree in exchange for his testimony regarding the Kahana branch robbery. Tempkins was released on his own recognizance and was not charged in the jewelry store robbery.

out of sight for very long on the day of the wedding, because of wedding day preparations. Vanstory denied involvement in the robbery and explained that he had no knowledge of the ammunition in his hallway closet, postulating that it could be one of his two or three other roommates' ammunition.

## A. *The Indictments*

On August 22, 1997, the Maui grand jury returned a two-count indictment, in Cr. No. 97–0515(1), charging Vanstory as follows:

COUNT ONE:

That on or about the 31st day of December, 1996, in the County of Maui, State of Hawaii, Chad Everett Vanstory, also known as "VIKING", SCOTT TEMPKINS, and NORMAN KAUI, as principals and/or accomplices, in the course of committing theft and being armed with a dangerous instrument, to wit, a semi-automatic pistol, did threaten the imminent use of force against the person of anyone who is present, with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree in violation of Section 708–840 (1993), Hawai'i Revised Statutes.

COUNT TWO:

That on or about the 31st day of December, 1996, in the County of Maui, State of Hawaii, CHAD EVERETT VANSTORY, also known as "VIKING", did knowingly carry on his person or have within his immediate control or intentionally use or threaten to use a firearm, loaded or unloaded, operable or inoperable, to wit, a semi-automatic pistol, while engaged in the commission of a separate felony, to wit, Robbery in the First Degree, thereby committing the offense of Carrying or Use of Firearm in the Commission of a Separate Felony in violation of Section 134–6(a) of the Hawaii Revised Statutes.

On November 17, 1997, the Maui grand jury also returned a four-count indictment in Cr. No. 97–0706(1), charging Vanstory as follows:

COUNT ONE:

That on or about the 31st day of December, 1996, in the County of Maui, State of Hawaii, CHAD EVERETT VANSTORY, also known as "VIKING", being a fugitive from justice, did intentionally, knowingly, or recklessly own, possess, and/or control a firearm, to wit, a semi-automatic pistol, thereby committing the offense of Fugitive in Possession of a Firearm in violation of Section 134–7(a) [ (1993) ] of the Hawaii Revised Statutes.

COUNT TWO:

That on or about the 31st day of December, 1996, in the County of Maui, State of Hawaii, CHAD EVERETT VANSTORY, also known as a "VIKING", having been indicted or convicted in this State and/or elsewhere of having committed a felony and/or felonies, did intentionally, knowingly, or recklessly own, possess, and/or control a firearm, to wit, a semi-automatic pistol, thereby committing the offense of Felon in Possession of a Firearm in violation of Section 134–7(b) of the Hawaii Revised Statutes.

COUNT THREE:

That on or about the 22nd day of August, 1997, in the County of Maui, State of Hawaii, CHAD EVERETT VANSTORY, also known as "VIKING", being a fugitive from justice, did intentionally, knowingly, or recklessly own, possess, and/or control firearm ammunition, thereby committing the offense of fugitive in Possession of Firearm Ammunition in violation of Section 134–7(a) of the Hawaii Revised Statutes.

COUNT FOUR:

That on or about the 22nd day of August, 1997, in the County of Maui, State of Hawaii, CHAD EVERETT VANSTORY, also known as "VIKING", having been indicted or convicted in this State and/or elsewhere of having committed a felony and/or felonies, did intentionally, knowingly, or recklessly own, possess, and/or control firearm ammunition, thereby committing the offense of Felon in the Possession of Firearm Ammunition in violation of Sec-

tion 134–7(b) of the Hawaii Revised Statutes.

(Brackets added.)

## B. *Jury Instructions*

Jury trial commenced on March 23, 1998. In the afternoon of March 27, 1998, the trial court instructed the jury, in relevant part, as follows:

> Instruction 16, in count one of the indictment in criminal [number] 97–0515(1), the defendant, Chad Everett Vanstory, is charged with the offense of robbery in the first degree as a princip[al] and/or accomplice.

> A person commits the offense of robbery in the first degree as a princip[al] and/or accomplice if, in the course of committing theft, and being armed with a dangerous instrument, he threatened the imminent use of force against a person of anyone present with the intent to compel acquiescence to the taking of or escaping with the property.

> There are five material elements of the offense of robbery in the first degree, each of which the prosecution must prove beyond a reasonable doubt.

> These five elements are: One, that on or about December 31, 1996. Two, in the County of Maui, State of Hawaii. Three, Chad Everett Vanstory. Four, in the course of committing theft. Five, and *being armed with a dangerous instrument, to wit, a semiautomatic pistol.* Six, did threaten the imminent use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property.

> Instruction 17, *dangerous instrument means any firearm, whether loaded or not, whether operable or not in which the matter it is intended to be used is known to be capable of causing death or serious bodily injury.*

> Instruction 18, *firearm means any weapon for which the operating force is an explosive, including but not limited to pis-* *tols, revolvers, rifles, shotguns and automatic firearms.*[2]

> Instruction 19, in count two of the indictment in criminal [number] 97–0515(1), the defendant, Chad Everett Vanstory, is charged with the offense of carrying or use of firearm in the commission of separate felony.

> A person commits the offense of carrying or use of a firearm in the commission of a separate felony, if he knowingly carries on his person or has within his control or intentionally used or threatens to use a firearm loaded or unloaded, operable or inoperable while engaged in the commission of a separate felony.

> There are five material elements of the offense of prohibited possession of a firearm in the commission of a separate felony, each of which the prosecution must prove beyond a reasonable doubt.

> These five elements are: One, that on or about December 31, 1996. Two, in the County of Maui, State of Hawaii. Three, Chad Everett Vanstory. Four, did knowingly carry on his person or have within his immediate control or intentionally use or threaten to use a firearm loaded or [un]loaded, operable [or] inoperable, to wit, a semiautomatic pistol. Five, while engaged in the commission of a separate felony, to wit, robbery in the first degree.

> . . . .

> Instruction 21, in count two of the indictment in criminal number 97–0706(1), the defendant, Chad Everett Vanstory, is charged with the offense of felon in possession of a firearm. A person commits the offense of felon in possession of a [firearm] if having been indicted or convicted in this state and/or elsewhere of having committed a felony and/or felonies, he intentionally, knowingly, or recklessly owns[,] possesses[,] or controls a firearm.

> There are five material elements of the offense of felon in possession of a firearm, each of which the prosecution must prove beyond a reasonable doubt.

---

**2.** HRS § 134–1 (Supp.1994) defines "firearm" as "any weapon, for which the operating force is an explosive, including but not limited to pistols, revolvers, rifles, shotguns, automatic firearms, noxious gas projectors, mortars, bombs, and cannon."

These five elements are: One, that on or about ... December 31, 1996. Two, in the County of Maui, State of Hawaii. Three, Chad Everett Vanstory. Four, having been indicted or convicted in this state and/or elsewhere of having committed a felony and/or felonies. Five, did intentionally, knowingly, or recklessly, possess, or control any firearm, to wit, a semiautomatic pistol.

. . . .

Instruction 23, in count four of the indictment in criminal number 97–0706(1), the defendant, Chad Everett Vanstory, is charged with the offense of felon in possession of firearm ammunition.

A person commits the offense of felon in possession of firearm ammunition if having been indicted or convicted in this state and/or elsewhere of having committed a felony and/or felonies, he intentionally, knowingly, or recklessly owns, possess[es], or controls any firearm ammunition.

There are five material elements of the offense of felon in possession of firearm ammunition each of which the prosecution must prove beyond a reasonable doubt.

These five elements are: One, that on or about ... August 22, 1997. Two, in the County of Maui, State of Hawaii. Three, Chad Everett Vanstory. Four, having been indicted or convicted in this state and/or elsewhere of having committed a felony and/or felonies. Five, did intentionally, knowingly, or recklessly own, possess, or control firearm ammunition.

Instruction 24, a defendant charged with committing an offense may be .guilty because he is an accomplice of another person in the commission of the offense.

The prosecution must prove accomplice liability beyond a reasonable doubt. A person is an accomplice of another in the commission of an offense if, with intent to promote or facilitate the commission of the offense, he A, solicits the other person to commit it. Or B, aids or agrees—or agrees or attempts to aid the other person in the planning or commission of the offense.

Mere presence at the scene of an offense or knowledge that an offense is being committed, without more, does not make a person an accomplice to the offense.

However, if a person plans or participates in the commission of an offense with the intent to promote or facilitate the offense, he is an accomplice to the commission of the offense.

. . . .

Instruction 28, the law recognizes two kinds of possession: Actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing either directly or through another person or person is then in constructive possession of it.

The law also—the law recognizes that the possession—that possession may be sole or joint.[3]

If one person alone has actual or constructive pos[session] of a thing, possession is sole. If two or more person share actual or constructive possession of a thing, possession is joint.

The element of possession has been proved if you find beyond a reasonable doubt that the defendant had actual or constructive possession either solely or jointly with others . . . .

(Brackets, footnotes, and emphases added.)

In the same afternoon of March 27, 1998, the jury found Vanstory guilty as charged on all counts.

---

**3.** When addressing a conviction of felon in possession of firearm or ammunition therefor under HRS § 134–7(b), the Intermediate Court of Appeals stated that "the accepted legal definition of possession includes both actual and constructive possession." *State v. Auwae,* 89 Hawai'i 59, 61,

968 P.2d 1070, 1072 (App.1998) (citing *State v. Mundell,* 8 Haw.App. 610, 617, 822 P.2d 23, 27, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 466, *cert. denied,* 72 Haw. 619, 841 P.2d 1075 (1991)) (internal quotation marks omitted).

## C. *The Sentencing Hearing*

On April 13, 1998, the prosecution moved, pursuant to HRS §§ 706–606 (1993) (sentencing factors), 706–661 (1993) (extended terms for felonies), 706–662(1) (Supp.1996) (extended terms for persistent offenders), 706–662(4) (Supp.1996) (extended terms for multiple offenders), and 706–668.5 (1993) (multiple sentences), for imposition of extended terms of imprisonment and/or consecutive terms of imprisonment on the basis of (1) prior convictions in foreign jurisdictions and (2) multiple felonies committed in the instant case. On May 13, 1998, the prosecution also moved, pursuant to HRS § 706–660.1(3)(b) (1993), for imposition of a mandatory term of imprisonment of fifteen years on the basis of Vanstory's use of a semiautomatic firearm.

On April 6, 1998, Vanstory moved for judgment of acquittal on all Counts in Cr. Nos. 97–0515 and 97–0706 on the grounds that his conviction violated HRS § 701–109 (1993). On April 27, 1998, a judgment of acquittal was granted with respect to Counts One (fugitive with firearm) and Three (fugitive with firearm ammunition) of Cr. No. 97–0706.

Vanstory's sentencing hearing was held on May 27, 1998. Vanstory opposed the imposition of (1) extended terms of imprisonment and/or consecutive terms of imprisonment and (2) the mandatory minimum term of imprisonment of fifteen years. With regard to the extended and/or consecutive terms of imprisonment, Vanstory argued that, although he stipulated to certain prior convictions, the prosecution had failed to prove beyond a reasonable doubt that Vanstory was represented by counsel and that, therefore, the sentencing court was precluded from using those convictions as a basis for imposing extended or consecutive terms. With regard to the imposition of the mandatory minimum term, Vanstory argued that the prosecution had failed to obtain specific findings of fact to be used for enhanced sentencing, *i.e.*, use of a firearm and/or semiautomatic firearm, through special verdict interrogatories, pursuant to *Garringer v. State*, 80 Hawai'i 327, 909 P.2d 1142 (1996). Finally, Vanstory argued that the remedy for an error of this kind at the sentencing stage was not resentencing but a new trial under *Garringer*.

The sentencing court then engaged counsel for both the prosecution and the defendant in a lengthy discussion with respect to Vanstory's contention regarding a special verdict interrogatory.

THE COURT: It was not necessary to have a special interrogatory because the charge, itself, charged the Defendant with possession of this firearm?

[Prosecutor]: Not under Count One, which is similar to *Garringer*, but Count Two is a separate offense. The jury deliberated on that and considered evidence presented, and they said Chad Vanstory, you did use or carry or threaten the use of a firearm during the commission of this armed robbery, to-wit: with a semi-automatic. It is all established. It was the reason the State charged it this way. The jury made their finding beyond a reasonable doubt that this is the person that carried the firearm.

. . . .

THE COURT: So you are saying the jury did answer that question by finding Defendant guilty of that charge?

[Prosecutor]: Absolutely, absolutely. That fulfills the requirements of 706–606.1 and when the jury does find that, your Honor, the Court is required—it is not even discretionary. Subsection (3) reads, "The Court shall impose on a Class A felony a mandatory minimum of fifteen years." So I do hope and expect that the Court will find that.

. . . .

THE COURT: The jury found your client guilty of carrying or use of firearm in commission of separate felony, and he was [the] only one charged under that indictment on that count. Isn't that a specific finding by the jury that your client was in possession of this firearm?

[Defense Counsel]: No, and I'll tell you why, your Honor. The [Hawai'i] Supreme Court has addressed that very issue and they said how simple it can be. It is not that simple. There are two phases to it.

One is my client has to be given notice of the aggravating circumstances. That was done and we're not objecting to that because within Count Two, even if the Court looks at Count two, a semi-automatic pistol was an aggravating circumstance. Then, you go on to the next evaluation by the Supreme Court. That's fine. It is so simple. It is not clear, however, if you are going to use an

aggravating circumstance to enhance sentencing, a fifteen year minimum, that takes a separate beyond a reasonable doubt finding, and that has to be made by the jury, and it has to be made as suggested by the Supreme Court to the trial courts in our state and it does not say you might.

. . . .

[Prosecutor]: Only one thing. I am sure the court is aware—I can tell the Court has read *Garringer*. *Garringer* does not say new trial. Says throw out mandatory minimum, Mr. Prosecutor, or send a new trial, one or the other and wasn't simply you are out of here with a new trial.

. . . .

The Court: All right. The sentence is that the Defendant be committed to the custody of the Director of Department of Public Safety as to Criminal Number 97–0515, Counts One and Two for a period of twenty years.

In Criminal Number 97–0706, Counts Two and Four, the Defendant be committed to the custody of the [D]irector of Public Safety for a period of ten years.

There is also the condition that Defendant pay restitution in the amount of nineteen thousand two hundred fifty-eight dollars with manner of payment to be determined by the [D]irector of Public Safety.[4]

As far as the motion to extend the terms of imprisonment, I will not extend the terms of imprisonment to life. As far as that requesting run consecutive, I'll run the sentences concurrently.

As far as the motion for mandatory minimum, I disagree with counsel for the Defendant's arguments. I find that the jury made a finding addressing the issue of whether or not Defendant was in possession of a *firearm*, and because of that, I'm mandated by law to impose a *fifteen* year minimum sentence, so I will grant the motion for imposition of mandatory minimum term of imprisonment.

(Emphases, footnote, and brackets added.) The final judgment, guilty conviction and sentence, and notice of entry were entered on May 27, 1998. This timely appeal followed.

## II. *STANDARDS OF REVIEW*

### A. *Plain Error and Jury Instructions*

 "As a general rule, jury instructions to which no objection has been made at

4. Vanstory does not raise as a point of error on appeal the sentencing court's failure to make

trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998); *see also State v. Kupau*, 76 Hawai'i 387, 392, 879 P.2d 492, 497 (1994); *State v. Pinero*, 75 Haw. 282, 291–2, 859 P.2d 1369, 1374 (1993). "[T]his court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642 (citing *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988)).

This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74–75 (1993) (quoting *Fox*, 70 Haw. at 55–56, 760 P.2d at 675–76). If the substantial rights of the defendant have been affected adversely, the error will be deemed plain error. *See Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642; *Pinero*, 75 Haw. at 291–2, 859 P.2d at 1374.

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." [*State v. ]Arceo*, 84 Hawai'i [1, ] 11, 928 P.2d [843,] 853 [ (1996) ] (citations and internal quotation marks omitted); *see also State v. Kupau*, 76 Hawai'i 387, 393, 879 P.2d 492, 498 (1994). If the instructions requested by the parties are inaccurate or incomplete but are necessary "in order for the jury to 'have a clear and correct understanding of what it is that they are to decide[,]'" then the trial court has the duty either to correct any defects or to fashion its own instructions. *State v. Okumura*, 78 Hawai'i 383, 411, 894 P.2d 80, 108 (1995) (citations

specific findings regarding his ability to pay. Therefore, we decline to address the issue.

omitted); *accord State v. Kinnane,* 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995).

Nevertheless, the "trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case." *State v. Apao,* 59 Haw. 625, 645, 586 P.2d 250, 263 (1978), *subsequent resolution,* 66 Haw. 682, 693 P.2d 405 (1984). Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. *State v. Robinson,* 82 Hawai'i 304, 310, 922 P.2d 358, 364 (1996). If that standard is met, however, "the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Pinero,* 75 Haw. at 292, 859 P.2d at 1374. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo. Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994).

*Sawyer,* 88 Hawai'i at 330, 966 P.2d at 642.

 Furthermore,

[e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] ... (1991)[.]

*Arceo,* 84 Hawai'i at 11–12, 928 P.2d at 853–54 (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997).

**B. *Sentencing***

 "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Davia,* 87 Hawai'i 249, 253–54, 953 P.2d 1347, 1351–52 (1998) (citing *State v. Valera,* 74 Haw. 424, 439, 848 P.2d 376, 383, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993); *State v. Cornelio,* 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) (quoting *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995))). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Roxas v. Marcos,* 89 Hawai'i 91, 115, 969 P.2d 1209, 1233 (1998) (citing *Davia,* 87 Hawai'i at 253, 953 P.2d at 1351 (citations and internal quotation signals omitted)).

**III. *DISCUSSION***

**A. *The Trial Court Sufficiently Instructed the Jury to Sustain Vanstory's Convictions under HRS §§ 708–840, 134–6, and 134–7.***

 Vanstory contends that this court should exercise its authority under the principle of plain error [5] and reverse his convictions, because the jury instructions were prejudicially insufficient insofar as the jury was not given the statutory definition of semiautomatic firearm under HRS § 134–1

firearm."

---

5. Neither Vanstory nor the State requested a jury instruction on the definition of "semiautomatic

(Supp.1994).[6] Vanstory contends that the language of the State's indictment—*i.e.*, (1) that Vanstory, Scott Tempkins, and Norman Kaui, as principals and/or accomplices,[7] in the course of committing theft and being armed with a dangerous instrument, to wit, a semiautomatic pistol, (2) that Chad Everett Vanstory did knowingly carry on his person a firearm, to wit, a semiautomatic pistol, while engaged in the commission of a separate felony, and (3) that Vanstory, having committed a felony and/or felonies, did intentionally, knowingly, or recklessly own, possess, and/or control a firearm, to wit, a semiautomatic pistol—made the use of a "semiautomatic pistol" an essential element of the crimes of which he was charged. We disagree.

 It is well settled that "the material parts which constitute the offen[s]e charged must be stated in the indictment, and they must be proved in evidence[,]" by the State beyond a reasonable doubt. *Territory v. Coe*, 37 Haw. 601, 602 (1947); *see, e.g., Arceo*, 84 Hawai'i at 14–15, 928 P.2d at 856–57; *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995). It is also well settled that "[t]he purpose of an indictment is 'to apprise the accused of the charges against him, so that he may adequately prepare his defense, and to describe the crime charged with sufficient specificity to enable him to protect against future jeopardy for the same offense.'" *State v. Sword*, 68 Haw. 343, 345, 713 P.2d 432, 434 (1986) (citations omitted).

Relying upon *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir.1994) (indictment using "to wit") and *United States v. Johnson*, 152 F.3d 618, 629 (7th Cir.1998) (indictment using "specifically"), Vanstory contends that the phrase "to wit" as used in the indictment is "an expression of limitation which . . .

makes what follows an essential part of the charged offense." *Johnson*, 152 F.3d at 629 (citation omitted). The United States Court of Appeals for the Seventh Circuit stated, in *Johnson*, that "an essential or material element of a crime [i]s one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Id.* at 630 (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (brackets added) (internal quotation marks omitted)). The Seventh Circuit also explained in *Willoughby* that:

> Obviously, whether a discrepancy is of constitutional dimension—that is, whether it constitutes an often-permissible narrowing or technical correction of the indictment as opposed to a never-permissible broadening of the indictment—turns on the role a departed-from allegation plays in the indictment. So long as a part of the indictment is unnecessary to and independent of the components of a charged, proven and found offense, proof diverging from it does not necessarily work a constructive broadening of the possible bases for conviction. If, on the other hand, an allegation is either necessary to or is made essential to the offense as charged, failure to support it with appropriate proof at trial, even if evidence does establish what would have been an adequate replacement offense if charged, is fatal. What becomes essential to a charged offense in a particular case—that is, above and beyond what is necessary as a statutory matter—depends upon the structure of the indictment, *see* [*United States v.*] *Leichtnam*, 948 F.2d [370], 377–78 [ (7th Cir.1991) ], and is thus

---

6. HRS § 134–1 defines "semiautomatic" as "the mode of operation by which a firearm uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of a trigger."

7. Vanstory does not challenge the accomplice liability language of the State's indictment. We recognize that, for the purpose of enhanced sentencing, accomplice liability cannot support a finding of possession if the defendant did not actually possess the firearm. *See Garringer*, 80 Hawai'i at 333–334, 909 P.2d at 1148–49 (evi-

dence showed that only the other robbery defendant possessed the firearm and that Garringer never actually possessed the firearm); *State v. Fukusaku*, 85 Hawai'i 462, 488–89, 946 P.2d 32, 58–59 (1997) (holding that general verdicts failed to reveal whether defendant was convicted on accomplice liability theory and that evidence supported accomplice liability theory). The instant case, however, is factually distinguishable from *Garringer* and *Fukusaku*. The evidence adduced at trial showed that only Vanstory possessed the firearm during the robbery.

completely within the government's control.

In this case, Count 11 of the indictment charged Willoughby with the use of a firearm "during and in relation to a drug trafficking crime, to wit: the distribution of cocaine . . ." (emphasis added). "To wit" is an expression of limitation which, as our cases indicate, makes what follows an essential part of the charged offense. *See United States v. Goines*, 988 F.2d 750, 773 (7th Cir.), cert. denied, [510] U.S. [887], 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *Leichtnam*, 948 F.2d 370 at 374, 379. A conviction that rests, no matter how comfortably, on proof of another offense cannot stand. *See United States v. Miller*, 471 U.S. 130, 138–40, 144, 105 S.Ct. 1811, 1816–18, 1819, 85 L.Ed.2d 99 (1985). Thus, even if an adequate § 924(c) charge need not indicate by name a particular drug trafficking offense, by the way it framed the indictment in this case, the government narrowed the legitimate scope of the weapons charge to Willoughby's use of a firearm in connection with the distribution of cocaine, not the mere possession with intent to distribute cocaine or "drug trafficking" generally. A conviction relying upon a link between the gun and the latter described conduct would constitute an impermissible broadening of the indictment, for its basis was necessarily excluded from the charge as phrased.

The discrepancy here is more than a simple matter of semantics unrelated to the substance of the offense charged. *See, e.g., United States v. Jungles*, 903 F.2d 468, 476 (7th Cir.1990). *Distribution and possession with intent to distribute are two separate trafficking offenses, two separate crimes of which Willoughby was in fact independently accused and convicted (by virtue of his plea).* Willoughby distributed the cocaine involved in the controlled buys and possessed, with intent to distribute, the cocaine found on his person and in the storage unit. Because "distribution" relates to different conduct than does "possession with intent to distribute", not just in theory, but in this case, a charge referencing one of these trafficking offenses cannot be deemed the equivalent

of a charge referencing the other. And since no evidence linked the gun to Willoughby's actual distribution of cocaine (taking place miles from where the gun was found) and no evidence indicated that any distribution occurred at the storage facility (packaging drugs for later distribution is not distribution—that is why possession with intent to distribute is such a popular drug charge) and because a hypothetical future distribution is not a legitimate basis for a current conviction, the weapons conviction could only have been based upon a possession-protection theory, a valid ground in this circuit but not when it falls outside the scope of the indictment. Willoughby's motion for a judgment of acquittal should have been granted.

*Willoughby*, 27 F.3d at 266–67 (emphasis added); *see also United States v. Weissman*, 899 F.2d 1111, 1114–15 (11th Cir.1990) (holding that the trial court reversibly erred when it altered an essential element of the crime charged and broadened the language of the indictment by instructing the jury on the general definition of "enterprise" for RICO conspiracy).

Here, HRS § 708–840 (1993) provides that a person commits robbery in the first degree "if, in the course of committing theft[,] . . . [t]he person is armed with a dangerous instrument and . . . [t]he person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property." HRS § 708–840 defines "dangerous instrument" to be *"any firearm,* whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury." (Emphases added.) Likewise, HRS § 134–6 provides in pertinent part:

**Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.**

(a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a fire-

arm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not. . . .

. . . .

(e) Any person violating subsection (a) or (b) shall be guilty of a class A felony. . . .

HRS § 134–7 provides in pertinent part:

**Ownership or possession prohibited, when; penalty.**

. . . .

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control *any* firearm or ammunition therefor.

. . . .

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

(Emphasis added.)

■■■■ Therefore, the *type* of dangerous instrument is not an essential element in proving the offense of robbery in the first degree. The prosecution must prove beyond a reasonable doubt that the defendant used a dangerous instrument during the robbery, but not which type of dangerous instrument. Similarly, the *type* of firearm is not an essential element in proving the offenses of carrying or use of a firearm in the commission of a separate felony or felon in possession of a firearm. The prosecution must simply prove beyond a reasonable doubt that the defendant possessed a firearm, not which type of firearm. The indictments would have been sufficient without the description of the firearm as a semiautomatic pistol. The inclusion of the phrase, "to wit," in the instant case, therefore, did not change the elements of the offenses. *See, e.g., State v. Nases*, 65 Haw. 217, 218, 649 P.2d 1138, 1139–40 (1982) (addressing ownership of property for purposes of HRS § 708–830); *cf.* HRS § 806–27

(1993) ("No indictment shall be held invalid or insufficient for want of the averment of any matter unnecessary to be proved[.]"); HRS § 806–34 (1993) ("In an indictment[,] the offense . . . may be stated with so much detail of time, place, and circumstances and such particulars . . . as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court had jurisdiction, and to give the accused reasonable notice of the facts."). We decline to read the indictment in such a hypertechnical sense, as promulgated in *Willoughby* and *Johnson, supra.* We decline to hold that the phrase "to wit" invariably makes whatever follows an element of the offense.

Moreover, the apparent purpose for the prosecution's inclusion of the phrase "semiautomatic pistol" in the indictments was to comply with this court's mandate in *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994). In *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203, this court noted that

"aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or put differently, *intrinsic* to the "commission of the crime charged," [and], in accordance with . . . [*State v. ]Estrada*, [69 Haw. 204, 738 P.2d 812 (1987) ] . . ., such aggravating circumstances "*must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact."

(Citing *State v. Schroeder*, 10 Haw.App. 535, 545–46, 880 P.2d 208, 213 (1992), *affirmed on different grounds*, 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994) (brackets added) (emphasis in original)). Schroeder was charged with robbery in the first degree (in addition to kidnaping). This court held that the indictment language—"while armed with a dangerous instrument, to wit, a handgun"— was sufficient to put Schroeder on notice of the State's intent to seek a mandatory minimum sentence. *See Schroeder*, 76 Hawai'i at 530, 880 P.2d at 205. The *Schroeder* court further held that a guilty verdict on the count of first degree robbery was a finding

beyond a reasonable doubt that the aggravating circumstance existed. *Id.*[8]

Later, in *Garringer*, 80 Hawai'i at 333–34, 909 P.2d at 1148–49, this court rejected the imposition of enhanced sentencing for possession of a firearm on the basis of accomplice liability, when the evidence showed that the defendant never actually possessed the firearm. In *dictum*, the *Garringer* court stated: "In order to avoid this problem in future cases, the circuit court should instruct the jury, by special verdict interrogatories, to make any and all findings relevant to the imposition of enhanced sentences where the requisite aggravating circumstances are intrinsic to the commission of the crime charged." *Id.* at 335, 909 P.2d at 1150. Accordingly, in *State v. Brantley*, 84 Hawai'i 112, 125, 929 P.2d 1362, 1375 (App.1996), *appeal decided by*, 84 Hawai'i 126, 929 P.2d 1376 (App.1996), and *State v. Kang*, 84 Hawai'i 352, 357, 358–59, 933 P.2d 1386, 1391, 1392–93 (App.1997), the Intermediate Court of Appeals, following *Schroeder* and *Garringer*, held that, for purposes of enhanced sentencing, the use of a semiautomatic firearm is an aggravating circumstance intrinsic to the commission of the crime charged, which must be alleged in the indictment and found by the trier of fact. Therefore, the purpose for the inclusion of aggravating circumstances intrinsic to the commission of the crime charged is to give the defendant fair notice, not to amend or narrow unilaterally the statutory elements of the crime or the statutory definitions of the terms "dangerous instrument" or "firearm."

Here, the prosecution adduced substantial evidence that Vanstory used *a firearm* when robbing the Kahana branch of Bank of Hawaii. For example, Vicklun testified that she saw the man dressed in white wielding a revolver. Monett testified that the man dressed in white held a semiautomatic. Tempkins testified that Vanstory used a .32 caliber automatic[9] during the robbery. No evidence was presented that Vanstory used a dangerous instrument other than a firearm. Furthermore, Lincoln and Tempkins identified Vanstory as the man dressed in white.

Before submitting the case to the jury, the trial court instructed the jury that the prosecution must prove beyond a reasonable doubt that Vanstory, in the course of committing theft and being armed with a dangerous instrument, to wit, a semiautomatic pistol, did threaten the imminent use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property. The trial court next instructed the jury that "dangerous instrument means any firearm, whether loaded or not, whether operable or not in which the matter it is intended to be used is known to be capable of causing death or serious bodily injury." The trial court then instructed the jury that "firearm means any weapon for which the operating force is an explosive, including but not limited to pistols, revolvers, rifles, shotguns and automatic firearms."

Although we recognize that it was error for the trial court not to provide a definition of "semiautomatic firearm,"[10] such error does not constitute reversible error for purposes of Vanstory's convictions. There is substantial evidence in the record to support the conclusion that the jury found Vanstory guilty of (1) first degree robbery on the basis of using a dangerous instrument, *i.e.*, a firearm, (2) carrying or use of a firearm in the commission of a separate felony, and (3) felon in possession of a firearm. When the jury instructions are read and considered as a

---

8. The indictment in *Schroeder*, similar to the instant case, alleged theft with a dangerous instrument, to wit, a handgun. *Id.*

9. HRS § 134–1 (1994) defines "automatic firearm" as

any firearm that shoots, is designed to shoot, or can be readily modified to shoot automatically more than one shot, without a manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such firearm, any part designed and intended solely and exclusively, or any

combination of parts designed and intended, for use in converting a firearm into an automatic firearm, and any combination of parts from which an automatic firearm can be assembled if the parts are in the possession or under the control of a single person.

10. The trial court's error in this regard implicates the validity of the sentencing court's imposition of an enhanced sentence, as discussed *infra* section III.C.

whole, the instructions are *not* "prejudicially insufficient, erroneous, inconsistent, or misleading." *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853. Furthermore, when considering the entire proceedings and the record as a whole, there is *no* reasonable possibility that the error might have contributed to Vanstory's convictions. *See Cullen*, 86 Hawai'i at 8, 946 P.2d at 962 (citations omitted).

Therefore, because Vanstory's convictions are premised upon the use of *any firearm* and because the language of the indictments and the trial court's instructions—"to wit, a semiautomatic pistol"—did not alter the statutory elements of HRS §§ 708–840, 134–6, or 134–7, the trial court's error does not warrant reversal of Vanstory's convictions of robbery in the first degree, carrying or use of a firearm in the commission of a separate felony, or felon in possession of firearm. We accordingly affirm.[11]

B. *Vanstory's Conviction under HRS § 708–840 Must Be Reversed Because It Is an Included Offense under HRS § 134–6.*

■ Although not presented as a point of error on appeal by Vanstory, the prosecution concedes the following:

11. Vanstory makes no substantive arguments regarding his conviction of felon in possession of firearm ammunition under HRS § 134–7(b). We accordingly affirm his conviction in this regard.

12. HRS § 701–109 provides:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
 (a) One offense is included in the other, as defined in subsection (4) of this section. . . .
 . . . .
 (4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
 (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
 (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
 (c) It differs from the offense charged only in the respect that a less serious injury or

The State believes, that pursuant to *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (Hawai'i 1998), the conviction for offense of Carrying or Use of a Firearm in the Commission of a Separate Felony may not survive the Court's review. It is the State's position that the Court should reverse the conviction on that offense and affirm Appellant's convictions and sentences for all other offenses, including the mandatory minimum sentence of fifteen years for the use of a semiautomatic pistol in the commission of the robbery in the first degree offense.

In *Jumila*, 87 Hawai'i at 3–4, 950 P.2d at 1202–04, this court held that HRS § 701–109(1)(a)[12] prohibits a defendant from being convicted of both the felony underlying an HRS § 134–6(a)[13] offense and the HRS § 134–6(a) offense, because the underlying felony is an included offense.

Unlike *Jumila*, the included offense in the instant case, *i.e.*, robbery in the first degree, is an offense of the same class and grade as carrying or use of a firearm in the commission of a separate felony under HRS § 134–6(a). They are both Class A felonies. Therefore, insofar as Vanstory's conviction

risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.
 . . . .

13. HRS § 134–6 provides in pertinent part:

**Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not. . . .
 . . . .
 (e) Any person violating subsection (a) or (b) shall be guilty of a class A felony. Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134–9 shall be guilty of a class B felony. Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a class C felony.

and sentence under HRS § 708–840 is an included offense under HRS § 134–6(a) and insofar as his convictions under both HRS §§ 134–4(a) and 708–840 violate HRS § 701–109(1)(a), we reverse Vanstory's conviction and sentence under HRS § 708–840.

### C. *Vanstory's Mandatory Minimum Sentence Must Be Vacated.*

 Vanstory contends that the sentencing court reversibly erred by imposing a mandatory minimum term of fifteen (15) years when the jury did not expressly find that Vanstory used a semiautomatic firearm in the commission of the Kahana branch robbery. We agree.

HRS § 706–660.1 (1993) provides in relevant part:

> **Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) *A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony,* whether the firearm was loaded or not, and whether operable or not, *may* in addition to the indeterminate term of imprisonment provided for the grade of offense *be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:*
>
> (a) For murder in the second degree and attempted murder in the second degree—up to fifteen years;
>
> (b) *For a class A felony—up to ten years;*
>
> (c) For class B felony—up to five years; and
>
> (d) For a class C felony—up to three years.
>
> The sentence of imprisonment for a felony involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706–669; provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706–670 only upon the expiration of the term of mandatory imprisonment fixed under paragraph (a), (b), (c), or (d).
>
> (2) *A person convicted of a second firearm felony offense* as provided in subsection (1) where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, *shall* in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:
>
> (a) For murder in the second degree and attempted murder in the second degree—twenty years;
>
> (b) For a class A felony—thirteen years, four months;
>
> (c) For a class B felony—six years, eight months; and
>
> (d) *For a class C felony—three years, four months.*
>
> The sentence of imprisonment for a second felony offense involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining a minimum term of imprisonment prescribed under section 706–669; provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706–670 only upon expiration of the term of mandatory imprisonment fixed under paragraph (a), (b), (c), or (d).
>
> (3) *A person convicted of a felony, where the person had a semiautomatic firearm or automatic firearm in the person's possession or used or threatened its use while engaged in the commission of the felony,* whether the semiautomatic firearm or automatic firearm was loaded or not, and whether operable or not, *shall* in addition to the indeterminate term of imprisonment provided for the grade of offense *be sentenced to a mandatory minimum term of imprisonment without pos-*

*sibility of parole or probation the length of which shall be as follows:*

 (a) For murder in the second degree and attempted murder in the second degree—twenty years;

 (b) *For a class A felony—fifteen years;*

 . . . .

(4) In this section:

 . . . .

 (c) "Semiautomatic firearm" means any firearm that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger.

(Emphases added.)

As noted above, the use of a semiautomatic firearm is an aggravating circumstance intrinsic to the commission of the offense charged and must be found by the trier of fact for purposes of enhanced sentencing. *See Brantley*, 84 Hawai'i at 125, 929 P.2d at 1375; *Kang*, 84 Hawai'i at 358–59, 933 P.2d at 1392–93. Although this court stated in *Garringer*, 80 Hawai'i at 335, 909 P.2d at 1150, that the use of special verdict interrogatories provides clarity, this court has not stated that a special verdict interrogatory is the only means by which a court can insure that the jury has, in fact, found that the aggravating circumstance exists. In fact, in *Schroeder*, 76 Hawai'i at 530, 880 P.2d at 205, this court stated that a guilty verdict on the very same aggravating circumstance, *i.e.*, felon in possession of a firearm, constitutes a "finding beyond a reasonable doubt that the same aggravating circumstance 'existed.'"

Here, the sentencing court concluded that the jury found beyond a reasonable doubt that Vanstory used a firearm, because he was convicted of carrying or use of firearm in the commission of a separate felony under HRS § 134–6(a). We agree and hold that the sentencing court did not err in concluding that the jury found beyond a reasonable doubt that Vanstory used a firearm during the robbery.

Furthermore, HRS § 706–660.1(1) provides for a permissive imposition of a ten-year mandatory minimum term for a Class A felony, and HRS § 706–660.1(2) provides for a mandatory imposition of a three-year, four-month mandatory minimum term for a Class C felony. Vanstory was properly convicted of carrying or use of firearm in commission of a separate felony, a Class A felony, and felon in possession of firearm, a Class C felony. Therefore, pursuant to statute, the *maximum* mandatory minimum period, so to speak, that the sentencing court could legally have imposed, had it chosen to impose the periods consecutively, would have been thirteen years and four months. However, the sentencing court imposed a mandatory minimum term of fifteen (15) years, apparently under HRS § 706–660.1(3), which addresses the use of semiautomatic firearm. In this regard, the court erred.

The prosecution nevertheless argues that, because (1) the indictment specifically alleged that Vanstory committed the robbery with a semiautomatic pistol, (2) the jury was instructed in the very same language as the indictment, and (3) the jury convicted Vanstory of robbery in the first degree and carrying or use of firearm in commission of separate felony, the guilty verdict constitutes a finding beyond a reasonable doubt that this aggravating circumstance existed, *i.e.*, the use of a semiautomatic pistol. If the jury had been instructed on the statutory definition of semiautomatic pistol, we would agree. However, because the jury was not so instructed and because there was conflicting evidence over the type of firearm Vanstory used, the guilty verdict of first degree robbery or carrying or use of firearm in commission of separate felony, in the instant case, cannot support the conclusion that the jury found beyond a reasonable doubt that the aggravating circumstance existed, *i.e.*, the use of a semiautomatic pistol.

 The prosecution contends that the trial court's error was harmless because the following testimony was sufficient to provide the jury with an explanation of semiautomatic firearm.

[Prosecutor:] Do you know the difference between a semiautomatic—or a pistol and a revolver?

[Monett:] Yes, I do.

Q. Explain to the jury what the difference is?

A. The semiautomatic there—the clip is in the handle. It doesn't have the round revolver. So you don't see—when it's

pointed at you, you don't see the round—it's just a small straight barrel.

Q. And what makes it's [sic] a semiautomatic?

A. That you can continue to pull the trigger.

Q. When you pull the trigger and the bullet is fired, one ejects and a new one is put into the chamber?

A. Yes.

Q. All you have to do is keep pulling the trigger?

A. Keep pulling, yes.

Q. What type of gun was it that was pointed at you? Was it a revolver or semiautomatic pistol?

A. A small semiautomatic pistol.

(Brackets added.) Insofar as the prosecution contends that a witness' testimony regarding the definition of semiautomatic firearm is the functional equivalent of a jury instruction by the trial court on the definition of semiautomatic firearm, we disagree. We hold that a witness' testimony *never* can supplant the trial court's duty to instruct the jury correctly and sufficiently.

On remand, the sentencing court is not empowered to make the necessary finding that Vanstory used a semiautomatic firearm during the robbery. *See Garringer,* 80 Hawai‘i at 334, 909 P.2d at 1149 (citing *Schroeder,* 76 Hawai‘i at 528, 880 P.2d at 203). Therefore, following the procedure adopted in *Garringer,* we withhold judgment on Vanstory's convictions of Count Two of Cr. No. 97–0515(1) (carrying or use of firearm in the commission of a separate felony) and Count Two of Cr. No. 97–0706(1) (felon in possession of firearm) for thirty days. If the prosecution within that time consents to resentencing without a mandatory minimum for the use of a semiautomatic firearm under HRS § 706–660.1(3), we will affirm the conviction on these two counts and remand for resentencing. If, however, the prosecution does not consent, we will vacate Vanstory's convictions on Count Two of Cr. No. 97–0515(1) and Count Two of Cr. No. 97–0706(1) and remand for retrial. We reiterate the advice proffered in *Garringer,* 80 Hawai‘i at 335, 909 P.2d at 1150: "In order to avoid this problem in future cases, the circuit court *should* instruct the jury, by special verdict interrogatories, to make any and all findings relevant to the imposition of enhanced sentences where the requisite aggravating cir-

cumstances are intrinsic to the commission of the crime charged." (Emphasis added.)

## IV. *CONCLUSION*

Based upon the foregoing, we affirm Vanstory's convictions of carrying or use of a firearm in the commission of a separate felony, felon in possession of firearm, and felon in possession of firearm ammunition. We reverse Vanstory's conviction of robbery in the first degree pursuant to *Jumila.* Finally, we vacate Vanstory's sentence and remand for further proceedings consistent with this opinion.