## TERRITORY OF HAWAII *v.*
## IRA WINSTON HALL RUTHERFORD.

### NO. 3082.

ARGUED JANUARY 11, 1957.  DECIDED JANUARY 25, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY RICE, C. J.

Ira Winston Hall Rutherford, hereinafter referred to as the defendant, has brought her case before this Supreme Court by writ of error to the circuit court, first circuit, Territory of Hawaii, first division.

The defendant was tried separately upon the second count of an amended information which charged in substance that she and a named man, hereinafter referred to as Victor, in Honolulu, City and County of Honolulu, Territory of Hawaii, on or about October 22, 1954, committed

certain acts in furtherance of an appointment for assignation in that they entered and remained in a certain dwelling house at 3811 Leahi avenue for the purpose of prostitution in violation of section 11673.01 of Act 26 of the Session Laws of Hawaii 1949.

The defendant entered a plea of "not guilty," personally and expressly waived trial by jury, and the judge of the first division of said circuit court tried the case without jury.

Upon defendant's oral motion for a bill of particulars, the Territory replied that the word "prostitution" meant the "giving or receiving of the body for sexual intercourse for hire."

Upon trial, two police officers were severally sworn as witnesses for the prosecution and the substance of their testimony was to the effect that on October 22, 1954, they first saw the defendant in downtown Honolulu at about 1:15 A.M. She was then engaged in a minor argument with a taxi driver. They warned her to go home because of her apparently intoxicated condition and after a defiant reply by her they left and drove to a place near her residence at 3811 Leahi avenue near Diamond Head. The officers parked, took a vantage point and waited. At about 2:00 A.M. they saw the defendant drive up alone in a car and park in front of her residence. Shortly thereafter another car was driven up and parked on the same street and about 100 or 200 feet behind the defendant's vehicle. A man, later identified, the one herein referred to by his given name, Victor, emerged from the second car, walked to the defendant's car and apparently engaged in conversation with her. The defendant then alighted from her auto and with Victor entered the dwelling house at 3811 Leahi avenue. As the defendant and Victor entered the house, the officers moved to a point on the sidewalk at the corner of the defendant's lot and from where, through an open venetian blind, they

could see the events that subsequently took place in the living room of the house.

Defendant and Victor entered the living room, sat and drank. About 2:35 A.M. the defendant got up, walked to a rear room and later emerged therefrom clad in blue panties and a brassiere. She sat down again in the living room, Victor took his wallet from his pocket and removed some green bills which appeared to the officers to be currency, the denominations of which were not ascertainable. Victor started to give defendant some of the bills. She shook her head. He handed her another one. She shook her head again. Finally he gave her three bills in all which she rolled up and tucked in her brassiere.

They, the defendant and Victor, sat and drank some more, he pouring into the glasses held by each some fluid from what appeared to be a light colored plastic flask or container. They watched pictures shown on the wall from a projector. Then Victor began "playing with Miss Rutherford by wrestling with her, biting her on the back."

The telephone rang, the defendant conversed and when finished retired to another room and later appeared therefrom in a knee-length housecoat or jacket of some kind. She and Victor conversed with each other briefly, then the defendant walked to the window, closed the venetian blinds and turned out the lights.

At that juncture the officers moved to a point near the rear portion of the premises where they saw and heard the defendant and Victor in the bedroom. The blinds were partially open, a lamp was on, and one of the officers saw the defendant in bed with Victor and the latter caressing her. The lights then went out and one of the officers testified in detail of sounds and voices he heard coming from within the room. He quoted what he heard was said and a reasonable conclusion to be drawn therefrom, it being a part of the *res gestae,* is that the parties, defendant and

Victor, were in bed together for the purpose of sexual intercourse and that Victor had paid the defendant $30 therefor.

One of the officers opened the window of the bedroom, shined his flashlight in, exhibited his badge, and placed both defendant and Victor under arrest for assignation. The other officer went around to the front of the house and entered through the front door, which was opened by the defendant for him upon demand.

Upon conclusion of the testimony of the two police officers, the Territory rested its case. Thereupon, the defendant moved for a dismissal on the ground that there was no proof showing that the defendant and Victor were not married. Argument was had on the motion to dismiss, but before any ruling thereon, the Territory moved to reopen its case and, over objection of the defendant, the latter motion was granted.

The Territory recalled one of the police officers to be questioned on the relationship of the parties — defendant and Victor — and he reiterated some of his previous testimony. On questioning by the court as to any conversation he had with the defendant as to her marital status the officer testified that about a week and a half before the arrest in this case he had spoken to her at the police station and she had told him that she had obtained a divorce from her husband, John Rutherford.

The Territory then called as a witness a clerk from the department of health statistics, one Keola Lazarus, who, over objection on the part of the defendant, testified that she had examined all the indexes of marriages in the Territory from the years 1948 through 1954 and had found no records indicating any marriage between the defendant, Ira Rutherford and the man herein referred to as Victor, whose full name was used for the purpose of the search.

The Territory then again rested its case. Whereupon the defense also rested.

The court found the defendant guilty as charged and sentenced her to six months imprisonment in the city and county jail. It is from that conviction and sentence that the defendant has appealed by writ of error.

The alleged errors are, briefly:

(1) That the circuit court abused its discretion in permitting the Territory to reopen its case to introduce evidence after a motion to dismiss was made by the defendant "grounded upon the lack of said evidence";

(2) That Keola Lazarus was not a qualified witness to testify as to those matters introduced by her testimony and that the circuit court should have sustained defendant's objection to her testimony;

(3) That the Territory failed to prove that the defendant was not married to the codefendant [Victor] and therefore defendant's motion to dismiss should have been granted; and

(4) That the evidence fails to prove that the defendant committed the offense of assignation as set forth in the second count of the information and, therefore, the order and judgment of the circuit court "was contrary to the evidence and sentence should not have been passed upon the defendant."

Defendant has conceded that permitting or disallowing a party to reopen its case for the purpose of submitting additional evidence is a matter within the discretion of the trial court, but contends that the reopening in the instant case was an abuse of discretion.

The first specification of error is without merit. The defendant had personally and expressly waived trial by jury and as a result of her doing so had placed the trial judge in the position of having to pass upon the credibility of the witnesses and their testimony, the sufficiency of the evidence and whether from all of it the trial judge was, or was not, convinced beyond a reasonable doubt of the guilt

of the defendant. In such a position the trial judge naturally wanted to and should have had for consideration all available evidence which might be material and competent. Under the circumstances, it was not an abuse, but a proper exercise of discretion, to permit the prosecution to reopen its case and introduce further evidence after having rested. Further, it appears from the record that, although the defendant had made a motion to dismiss, defendant had not rested prior to doing so.

The second specification of error is without merit, for conceding that the witness Keola Lazarus was not more than a clerk in the department of health statistics, it was shown that she had access to and examined indexes of the records of marriages therein. She was, therefore, competent to testify as to what she had done. The weight of her testimony was for the judge to determine as trier of the facts. The witness was not testifying as to the validity of a copy of any official record, so it was not necessary to qualify her as one being the custodian of the original of a record of which a copy was being offered.

The defendant's third specification of error is without merit, for it was not necessary for the Territory to prove that the defendant was not married to Victor. Therefore, even without the testimony of Keola Lazarus or without giving any weight to it, the case for the prosecution was complete.

We are in accord therewith and adopt as applicable to the instant case and our thinking in regard thereto, what was said by Mr. Chief Justice Vinson in the opinion of the court in *United States* v. *Fleischman*, 339 U. S. 349 (decided May 8, 1950), at page 360, et seq.:

"We think that the circumstances of this case fairly bring into play the familiar doctrine in criminal cases that 'it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the

truth of which is fairly indicated by established circumstances and which if untrue could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control.' "

Also, the therein cited case of *Rossi* v. *United States,* 289 U. S. 89, 91-92 (1933), and authorities cited in the latter.

Referred to in the *Fleischman* case, *supra,* by Mr. Chief Justice Vinson as having "been well stated" was what in the *Rossi* case, *supra,* was said by Mr. Justice Cardozo and which is quoted as follows:

"The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression."

\* \* \*

"\* \* \* For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance \* \* \*, or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception." \* \* \* "The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree,

too dependent in last analysis upon a common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One can do no more than adumbrate them; sharper definition must await the specific case as it arises." *Morrison* v. *California,* 291 U. S. 82, 88-91 (1934). See also the court's footnote commencing at the bottom of page 361 of the *Fleischman* case, *supra.*

See also *Bell* v. *United States,* 185 F. (2d) 302 (U. S. C. A. 4th Circuit, decision as corrected January 26, 1951) at page 309 [9-11] and cases cited therein.

An early case in point is *State* v. *McDuffie et al.* (Supreme Court of North Carolina. November 17, 1890), 12 S. E. 83, from which the following is extracted:

"* * * Whether defendants were married or not was a matter peculiarly within their knowledge. If married, they could have easily have [sic] shown that fact, and at once have put an end to the proceeding. They were themselves competent witnesses. To call upon the state to prove a negative of this character would virtually repeal the statute. Parties might come to this state from other states or foreign countries, or indeed from distant counties in this state. The state could not possibly prove in many cases that the parties had at no time and in no place ever been married. This construction would license concubinage. On the other hand, it is no hardship on the defendants when so charged with a scandalous offense to prove that they live in honorable wedlock. A similar rule, and for the same reason, prevails in indictments for retailing without license. If the retailing is shown, the burden is on the defendant to show that he has license so to do. [citing cases.]

" 'The state need not prove that the defendants are unmarried. It will be presumed such is the case till

defendants offer proof to the contrary.' 8 Amer. & Eng. Enc. Law, 563; Bish. St. Crimes, § 693. Two other reasons are also to be given for this rule as to this offense. 'The single state is the natural, and during early life the only possible, one; nor is there any period at which it is necessarily terminated or merged in marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which exists in youth continues. Therefore, until drawn in question, no affirmative testimony on this point was required from the prosecution.' [citations.] And again, while the burden is on the state to prove the *res gestae* of the offense, marriage or non-marriage is no part thereof. It is a status which exists prior to such acts, and independently of them. The single state, existing first, in the absence of evidence is presumed to continue, and, if it had been changed to the marriage state between the defendants, it is a matter peculiarly within their knowledge, and there is no good reason to call on the state to prove a negative."

Section 10682, Revised Laws of Hawaii 1945, is as follows:

"Sec. 10682. Innocence, presumption of. A person accused shall be presumed innocent, and in case his guilt is not satisfactorily shown, be acquitted."

Pertinent, therefore, is what is said in *Wigmore on Evidence,* vol. IX, third edition, § 2511, pp. 406-412, and, particularly, the extracts therefrom which are quoted as follows:

"* * * the 'presumption of innocence' is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i.e. the rule that it is for the prosecution to adduce evidence (ante, § 2487), and to produce persuasion beyond a reasonable doubt (ante, § 2497). As to this

latter part, the measure of persuasion, the 'presumption' says nothing. As to the former part, the 'presumption' implies what the other rule says, namely, that the accused (like every other person on whom the burden of proof does not lie) may remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; i.e., to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it.

"However, in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, nothing but the evidence, i.e., no surmises based on the present situation of the accused. * * *
        * * *

"So far, then, as the 'presumption of innocence' adds anything, it is particularly a warning not to treat certain things improperly as evidence.
        * * *

"If a legitimate presumption on a particular issue is raised, so as to create a duty for the accused to produce some evidence to the contrary, and he does not do so, there is no reason why the jury may not be required to find according to the presumption (ante, § 2495).

But if the accused does adduce some evidence, and thus the case comes into the hands of the jury free from the presumption, the rule about persuasion beyond a reasonable doubt (ante, § 2497) is in force throughout for measuring their belief, and they must be so persuaded, in spite of the rule of presumption; this is sometimes incorrectly expressed by saying that the presumption of innocence overcomes presumptions against the accused."

The defendant's fourth specification of alleged error is to the effect that the "evidence fails to prove that the defendant committed the offense of assignation as set forth in the second count of the information" and, therefore, "the order and judgment of" the court "was contrary to the evidence and sentence should not have been passed upon the defendant."

We hold otherwise. After considering the evidence to determine the sufficiency or lack thereof, we find that the uncontradicted testimony — as summarized *supra* — of the two police officers sufficed, if believed by the trial judge and the same satisfied the latter beyond a reasonable doubt, to justify the finding of the defendant guilty as charged. See *Territory* v. *Ebarra,* 39 Haw. 488, 492 (1952) and cases cited therein.

Conviction, judgment and sentence affirmed.

*John R. Desha II* (*William K. Amona* with him on the briefs) for plaintiff in error.

*Peter Howell,* Assistant Public Prosecutor (also on the brief) for defendant in error.