157 P.3d 590

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Faa P. FETELEE, also known as Ben Faitele and Fagota Faamagalo, Defendant–Appellant.**

No. 27482.

Intermediate Court of Appeals of Hawai'i.

April 18, 2007.

Certiorari Granted Aug. 29, 2007.

Taryn R. Tomasa, Deputy Public Defender, on the Opening Brief, for Defendant–Appellant.

Deborah L. Kim, Deputy Public Defender, on the Reply Brief, for Defendant–Appellant.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Faa P. Fetelee, also known as Ben Faitele and Fagota Faamagalo, (Fetelee) appeals from the Judgment of Conviction and Sentence filed on August 3, 2005 in the Circuit Court of the First Circuit[1] (circuit court). On appeal, Fetelee argues that the circuit court erred by (1) admitting character evidence in violation of Hawaii Rules of Evidence (HRE) Rules 403 and 404, (2) permitting the State of Hawai'i (the State) to reopen its case, and (3) failing

---

1. The Honorable Michael D. Wilson presided.

to give a limiting instruction prior to the HRE Rule 404(b) evidence. We affirm.

## I.

On June 23, 2003, the State charged Fetelee via a Complaint with Attempted Murder in the Second Degree, in violation of Hawaii Revised Statutes (HRS) §§ 705–500 (1993), 707–701.5 (1993), and 706–656 (1993 & Supp. 2006) (Count I); Attempted Assault in the Second Degree, in violation of HRS §§ 705–500 and 707–711(1)(a) (1993) (Count II); and Theft in the Second Degree, in violation of HRS § 708–831(1)(a) (1993 & Supp.2004) (Count III).

### A. Fetelee's Motion in Limine # 1 and State's Motion in Limine No. 1

On April 18, 2005, Fetelee filed his Motion in Limine # 1 (Fetelee's Motion) and the State filed its Motion in Limine No. 1 (State's Motion). Fetelee moved the circuit court to exclude from use at trial, inter alia, testimonial or documentary evidence relating to (1) any other "bad acts" involving Fetelee and (2) any unfavorable evidence against Fetelee that might not technically be considered "bad acts" under HRE 404, but that should be excluded as irrelevant under HRE 402 or as unfairly prejudicial under HRE 403. The State sought, inter alia, a ruling from the circuit court

> (c) admitting evidence that [Fetelee] returned to his residence and became enraged when he found a vehicle blocking the driveway. [Fetelee] forcibly entered the apartment of Angela Lope[z] and confronted Eddie Freeman regarding the parked vehicle; [Fetelee] punched Freeman and left the apartment. While [Fetelee] was still angry he confronted passer-by Kuulei Lincoln, demanded money from her and removed a ten dollar bill from her pocket without permission (Count III). [Fetelee's] attention was drawn to Michael Hartman and Kenter Alik (Complainants in Counts I & II). Evidence regarding [Fetelee's] conduct toward Freeman is relevant to prove state of mind, motive, and intent. [HRE Rules] 401, 402, 403.

On April 19, 2005, the circuit court held a hearing on the motions. Angela Lopez (Lopez) testified that prior to June 8, 2003, Fetelee had visited her apartment to talk to her sister. On the night of June 7 into the early morning hours of June 8, 2003, Lopez was in the living room of her apartment with her friends, Tony, Eddie Freeman (Freeman), and Josh. Fetelee knocked on Lopez's door and opened the door before she got to it. Fetelee initially asked Lopez whether she could get him any drugs. Lopez recalled that Fetelee was intoxicated and had an "angry kind of voice." She testified that Fetelee was saying "what what" to Tony, her sister's boyfriend, like he was "in a way calling out" Tony. Fetelee came into her apartment, picked up a fan, and threw it straight up at the ceiling. Fetelee's throwing of the fan caused the fan to become unplugged from the wall, which, in turn, caused the lights in the apartment to go out. Lopez testified that Fetelee then "went after" Freeman and, even though it was "kind of dark," it looked like Fetelee punched Freeman. She testified that after Fetelee attacked Freeman, Freeman and Josh ran out the back door. Fetelee chased Tony out of the apartment to the neighbor's apartment upstairs. Lopez stated that Fetelee returned later, apologized, and then left. She thought Fetelee had returned right before the sun came up and was "pretty sure" it was after 4:00 a.m.

Lopez testified that she did not become aware of the incident that occurred in the early morning hours of June 8, 2003 [2] outside her apartment until she walked outside in the early morning. She estimated that it "was hours" between the time Fetelee left her apartment and the time of that incident, but she was not sure how many hours.

The State contended the incident in Lopez's apartment should be admitted to prove Fetelee's intent, state of mind, opportunity, and motive. The State argued that while Lopez appeared to have "some failure of recollection" regarding the "time element," the charged incidents had occurred no more than ten minutes after the incident in Lo-

2. The June 8, 2003 incident was between Faa P. Fetelee (Fetelee) and Kenter Alik (Alik) and Michael Hartman (Hartman) and was the basis for Counts I and II of the Complaint.

pez's apartment—while Fetelee was still angry and upset. The State advised the court that a witness (Freeman) had indicated that the charged offenses occurred right after the incident in Lopez's apartment and the State planned to have Freeman testify. The State asked the circuit court to take the matter under advisement until it could locate Freeman. The circuit court reserved ruling on the issue until Freeman had been located and given an opportunity to testify.

On April 25, 2005, the circuit court suspended trial proceedings to hear Freeman's testimony. Freeman testified that in the early morning hours of June 8, 2003, he was in Lopez's apartment. Fetelee came to the door of the apartment and nicely asked Lopez if someone could move the van that was blocking his parking space. Lopez went upstairs, talked to the people upstairs, and came back in the apartment. The people upstairs did not move the van, and Fetelee came back, pounded on Lopez's apartment door, and then entered the apartment. Fetelee was becoming angry because he had to go somewhere. Lopez started yelling at Fetelee for pounding on the door, and then Fetelee began yelling at everyone. Freeman observed that Fetelee was drunk and "just kind of mad." Fetelee was standing right next to Freeman when Fetelee threw the fan and the electricity went off. When the lights went out, Freeman remained seated. Freeman testified that he then felt something that he thought was a fist hit him on the right side of his jaw area. Freeman identified Fetelee as the person who hit him. Freeman ran out of the apartment and retreated to a gas station down the street, where he talked to one of his friends for a few minutes. When Freeman returned to the apartment, he noticed the police and the ambulance. Freeman estimated that roughly ten minutes had elapsed between the time Fetelee hit him and the time he returned to the apartment. Thereafter, the circuit court made the following ruling:

> It's the judgment of the court that there is sufficient evidence for a reasonable juror

to conclude that within a time period of as short as three minutes before Mr. Fetelee's contact with Ms. Lincoln, he was angry and intoxicated and that he was angry and intoxicated while engaging in assaultive behavior at Ms. Lopez's apartment. Accordingly, the incident in Ms. Lopez's apartment was sufficiently coincident with the alleged offenses as to constitute the *res gestae* of the alleged offenses. Though the incident does not constitute a prior bad act, it is noted that its relevance does include an explanation of the defendant's motive, that is, to manifest the anger he continued to experience as a result of the incident in Ms. Lopez's apartment. With respect to Rule 403, while the evidence is admittedly prejudicial, it is of significant probative value to core matters of proof required by the prosecution. For these reasons, the defendant's motion in limine to exclude evidence of the defendant's conduct in Ms. Lopez's apartment is denied.

### B. Trial

Lopez and Freeman's testimonies at trial were substantially the same as their testimonies at the motion in limine hearings, except Freeman testified that he was hit by a fist, but he did not know if it was Fetelee who hit him.

Kenter Alik (Alik) [3] testified that on June 7, 2003, he and his cousin, Michael Hartman (Hartman), worked at McKinley Car Wash. The two men took the bus home to Aiea and arrived in Aiea at around 1:30–2:00 a.m. on June 8, 2003. As the two men walked from the bus stop, Alik noticed two people, Fetelee and a woman, in the parking lot near Fetelee's apartment building.

Alik testified that he was walking ahead of Hartman. He heard Fetelee say "You're a tough guy," and when Alik looked back, he saw Fetelee hit Hartman and Hartman fall to the ground. After Hartman was on the ground, Fetelee kicked Hartman in the face. Alik thought Hartman was dead because Hartman did not move and there was blood coming out of his nose. Alik ran to help

---

**3.** At the time of trial, Alik was 25 years old. He had come to Hawai'i from Chuuk, Micronesia three years prior to the time of this testimony.

Alik testified through the assistance of a Chuukese interpreter.

Hartman and a fight ensued between Alik and Fetelee. Neither of the men were successful in hitting or kicking the other. Alik took off his backpack, hit Fetelee with it, and then acted like he was going to pull something out of the backpack. At this point, Fetelee ran towards his apartment building.

Alik began to pull Hartman across the street towards their house, but Hartman became too heavy to pull. Fetelee returned with a small black bag. Alik dropped Hartman, took off his backpack, and hit Fetelee with the backpack. Fetelee pulled a knife from the black bag. Alik testified that he tried to run, but Fetelee caught him and stabbed him once in his side and once in his stomach. Alik tried to run again, but he fell, and Fetelee stabbed him behind his right ear. Alik went to his apartment and called his cousins to come help Hartman, who was still lying on the street. Alik testified that he remembered losing consciousness in the ambulance and not regaining it until one month later in the hospital. He testified that at no time while he was walking home did he threaten Fetelee or challenge Fetelee to a fight.

Kuulei Lincoln (Lincoln) testified that in the early morning hours of June 8, 2003, she was walking to Lopez's apartment when she met Fetelee in the driveway in front of the apartment building where Fetelee's and Lopez's apartments were located. She stated that from his body motions and the way he called to her, Fetelee "looked angry." Fetelee asked Lincoln if she had a cigarette and any money. Lincoln answered "no" as to the money. As Lincoln pulled out her cigarette pack, a ten dollar bill came out, and Fetelee grabbed the bill. Lincoln testified that she did not ask for the money back because she did not want to create a hassle.

Lincoln testified that as she and Fetelee were talking, two Micronesian boys walked by them. Lincoln testified that Fetelee was still angry and began yelling at the boys, "What, you think you guys tough?" The two boys did not say anything-they just shook their heads "no." Fetelee then hit the skinny boy twice in the face, and the skinny boy fell to the ground. The fat boy was trying to help the skinny boy out of the middle of the

road when Fetelee hit the fat boy with his hand. Fetelee ran upstairs to his apartment and returned with a fanny pack. Fetelee pulled a knife from his fanny pack and stabbed the fat boy. Fetelee proceeded to rifle through the backpack of one of the Micronesians. Lincoln testified that at no time did she observe the two Micronesian boys say or do anything to make Fetelee angry.

On April 27, 2005, the jury found Fetelee guilty as charged on Counts I and II and guilty of the included offense of Theft in the Fourth Degree on Count III. The circuit court entered its judgment on August 3, 2005. Fetelee filed a Notice of Appeal on September 2, 2005.

## II.

### A. Abuse of Discretion

■ "Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Crisostomo*, 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000) (internal quotation marks, citations, and brackets omitted).

### B. Jury Instructions

■ As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error.... [T]his Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citations omitted).

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. If the instructions requested by the parties are inaccurate or incomplete but are necessary in order for the jury to have a clear and correct understanding of what it is that

they are to decide, then the trial court has the duty either to correct any defects or to fashion its own instructions.

Nevertheless, the trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. If that standard is met, however, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo*.

Furthermore, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Vanstory*, 91 Hawai'i 33, 42–43, 979 P.2d 1059, 1068–69 (1999) (internal quotation marks, citations, and brackets omitted; block quote format changed).

### C. Plain Error/Rule 52(b)

■ Hawai'i Rules of Penal Procedure Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted).

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks and citation omitted).

This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Id.* (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

### III.

**A. The circuit court properly admitted evidence of the prior incident at Lopez's apartment as part of the *res gestae* of the charged offenses.**

■ Fetelee argues that the circuit court erred in categorizing the incident that transpired in Lopez's apartment as part of the *res gestae* of the charged offenses and admitting it into evidence. *Res gestae* is defined as "[t]he events at issue, or other events contemporaneous with them." *Black's Law Dictionary* 1335 (8th ed.2004). In 1953, the Supreme Court of Hawai'i defined *res gestae* as

those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculating policy of actors. In other words, they must stand in immediate casu-

al relation to the act—a relation not broken by the interposition of voluntary individual wariness seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.

*Territory of Hawaii v. Lewis,* 39 Haw. 635, 639 (1953) (quoting *St. Clair v. United States,* 154 U.S. 134, 149–50, 14 S.Ct. 1002, 1008, 38 L.Ed. 936 (1894)). The Hawai'i Supreme Court further stressed that the close proximity in time is not the ultimate consideration as to whether the testimony is received into evidence as part of the *res gestae.* Rather, the ultimate test is "spontaneity or instinctiveness and logical relation to the main event." *Lewis,* 39 Haw. at 640 (internal quotation marks and citation omitted). In *Lewis,* the circuit court convicted Lewis of assault and battery with intent to disfigure another. *Id.* at 636. During trial, the circuit court admitted a statement Lewis made, while still intoxicated, to a police officer immediately after the police gained entry into the apartment. *Id.* at 638–39. The Hawai'i Supreme Court concluded that circuit court correctly reasoned that the statement was part of the *res gestae,* having been "made under the exciting influence of said events, reasonably contemporaneous thereto and without prior opportunity for deliberation or manufacture." *Id.* at 640.

In the instant case, the circuit court properly admitted the evidence of the prior incident in Lopez's apartment as part of the *res gestae* of the incident in question. At trial, Fetelee testified that he returned home to find three cars parked in the parking lot. He went to Lopez's apartment at around 11:30 p.m. or 12:00 midnight and told Lopez to tell whoever owed one of the the cars to move it so that his girlfriend could park her van. He testified that he was "all drunk already" when he entered Lopez's apartment. He went upstairs, and when he came back down, no one had moved the car and the police were about to ticket the van. He went back to Lopez's apartment and pounded on the door. Fetelee went in the apartment to find out who owned the car; he told the people in the apartment to move the car

before he "bust up" the car. Fetelee denied challenging anyone in the apartment to a fight or threatening to kill anyone there. He testified that he was upset, but not mad. He testified that he "went move up the fan and [it] hit the roof," but he "never try hurt anybody." He denied that he punched Freeman; he stated that when he turned around in the hallway, "his side went hit" Freeman. He testified that he "walked," not ran, after Tony. Fetelee went upstairs to his apartment, past the apartment where Tony was, and then about five to ten minutes later returned to Lopez's apartment to apologize. He testified that he told Lopez he was "sorry about the incident," he never meant to do that, and he "was only mad." He went back to his apartment for about ten minutes, drank a beer, and then went outside to the parking lot area. At this point, Fetelee came into contact first with Lincoln and then the two Micronesian men.

In total, Fetelee was agitated when he arrived home to find his parking stall blocked and his agitation, coupled with his intoxication, continued throughout the course of the early morning. The incident in Lopez's apartment, the exchange with Lincoln, and the unprovoked assault on the two Micronesian men were reasonably contemporaneous with one another.

**B. There is a *res gestae* exception to HRE Rule 404(b).**

Fetelee argues that the incident in Lopez's apartment constituted a prior bad act that is inadmissible under HRE Rule 404(b) or, alternatively, under Rule 403. Specifically, Fetelee argues that since the codification of HRE in 1981, there has been no indication that Hawai'i courts intended to expand the *res gestae* doctrine to include an exception to wrongs, crimes, or acts encompassed under HRE 404. The incident at Lopez's apartment clearly constituted *res gestae* evidence linked to the crimes charged and was not wholly independent from it. Because our appellate courts have not addressed a *res gestae* exception to Rule 404(b), we look to other jurisdictions for guidance.

In *State v. Elmore,* 139 Wash.2d 250, 985 P.2d 289 (1999), Elmore pled guilty to rape and aggravated first degree murder of a fourteen-year-old victim. *Id.* at 256 & 262, 985 P.2d at 296 & 299. Elmore appealed, contending, inter alia, that the trial court erred in admitting evidence that he had molested the victim when she was five years old. *Id.* at 285, 985 P.2d at 311. He reasoned that the prior molestation was a separate bad act and had to be evaluated under Rule 404(b). 139 Wash.2d at 285, 985 P.2d at 311. The Washington Supreme Court disagreed and held that the prior molestation was part of the *res gestae* of the crimes charged. *Id.* at 285 & 288, 985 P.2d at 311–12. The court reasoned that the victim's threatening to disclose the prior molestation had served in part as a catalyst for her murder and therefore the trial court thought it was proper to allow the admission of the prior molestation to "complete the picture" for the jury. *Id.* at 285–87, 985 P.2d at 311–12. The court concluded that such admission was proper under the *res gestae* or "same transaction" exception to Rule 404(b). 139 Wash.2d at 286, 985 P.2d at 311. "This exception permits the admission of evidence of other crimes or misconduct where it is a link in the chain of an unbroken sequence of events surrounding the charged offense in order that a complete picture be depicted for the jury." *State v. Acosta,* 123 Wash.App. 424, 442, 98 P.3d 503, 512 (2004) (internal quotation marks, citation, and ellipsis omitted).

The *res gestae* exception to the general Rule 404(b) is also recognized in Michigan. *People v. Robinson,* 128 Mich.App. 338, 340 N.W.2d 303 (1983). Robinson was convicted of carrying a concealed weapon. *Id.* at 339, 340 N.W.2d at 304. At trial, the victim testified that Robinson had robbed her of $80 so that he could replace the money he had previously stolen from his employer. *Id.* at 339–40, 340 N.W.2d at 304. The Court of Appeals of Michigan held the victim's testimony inadmissible. *Id.* at 340, 340 N.W.2d at 304. The court reasoned that while the portion of the victim's testimony involving her robbery by Robinson could have been properly admitted under the *res gestae* exception to the general rule (404(b)), the portion of her testimony as to Robinson's motive

for robbing her was wholly irrelevant as Robinson had been charged with carrying a concealed weapon, not robbery. 128 Mich. App. at 340–41, 340 N.W.2d at 304–05. Michigan courts have defined the *res gestae* exception to Rule 404(b) as that "evidence of prior bad acts [that] is admissible where those acts are so blended or connected with the charged offense that proof of one incidentally involves the other or explains the circumstances of the crime." 128 Mich.App. at 340, 340 N.W.2d at 304 (internal quotation marks, citation, and parentheses omitted; bracketed material added).

Likewise, in *State v. Pasek,* 691 N.W.2d 301 (S.D.2004), the Supreme Court of South Dakota stated that "evidence of 'other acts' may be admissible as *res gestae* evidence, . . . an exception to [South Dakota Codified Laws (SDCL)] 19–12–5 or Federal Rule 404(b)." *Pasek,* 691 N.W.2d at 309 n. 7. On June 29, 2003, Pasek escaped from jail in Montana, stole a car, and drove it to South Dakota. *Id.* at 304. On June 30, 2003, Pasek robbed a bank in South Dakota, stole a second vehicle, and proceeded to Indiana, where the authorities later apprehended him. *Id.* A jury convicted Pasek of one count of robbery in the first degree and three counts of grand theft. *Id.* On appeal, Pasek contended the trial court had erred in admitting statements that Pasek made to his friend while they were in the first stolen vehicle about Pasek's plans to rob the bank. *Id.* at 309. According to Pasek, these statements constituted "impermissible other acts evidence." *Id.* at 307 (brackets omitted). The South Dakota Supreme Court disagreed, determining that Pasek's complete criminal transaction began with his escape and auto theft on June 29 and ended with the bank robbery and second auto theft on June 30, and concluding that because Pasek's statements were immediately antecedent to the main transaction and were helpful in understanding the bank robbery and vehicle thefts, the statements were properly admitted as *res gestae.* *Id.* at 309.

The *res gestae* embraces matters and statements immediately antecedent to, and having a causal connection with, the main transaction. The *res gestae* as applied to a crime, includes the complete criminal

transaction from its beginning or starting point in the act of accused until the end is reached. Continuing acts or a series of events, transpiring before the commission of the crime, and which lead up to and are necessary or helpful to an understanding of the main event, and tend to explain the conduct and purposes of the parties are admissible as part of the *res gestae.*

*Id.*

And, in *People v. Quintana,* 882 P.2d 1366 (Colo.1994), a jury convicted Quintana of, inter alia, first degree murder. *Id.* at 1370. Prior to trial, Quintana moved to suppress three statements he had made either during or immediately subsequent to the murder— all of which expressed his desire to kill other persons not involved in the instant murder. *Id.* at 1370 & 1373. The Supreme Court of Colorado concluded that the statements could have been properly admitted as *res gestae* evidence of the crime:

> Evidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the factfinder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred. Such evidence is generally linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. This type of evidence is considered part of the *res gestae* of the offense and it is not subject to the general rule that excludes evidence of prior criminality. *Res gestae* evidence includes the circumstances, facts and declarations which arise from the main event and serve to illustrate its character. It also includes evidence that is closely related in both time and nature to the charged offense.

*Id.* at 1373 (internal quotation marks, citations, and footnote omitted). The court further emphasized that *res gestae* evidence "is the antithesis of CRE [Colorado Rules of Evidence] 404(b) evidence. Where CRE 404(b) evidence is independent from the charged offense, *res gestae* evidence is linked

to the offense." 882 P.2d at 1373 n. 12. The court added that *res gestae* evidence "is admissible only if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice." *Id.* at 1374.

In the instant case, the incident in Lopez's apartment is linked to the crimes charged. Furthermore, the incident is relevant to provide the jury with an explanation as to why Fetelee was so angry and agitated. Fetelee was intoxicated. Fetelee acted violently and irrationally in barging into Lopez's apartment, throwing a fan, punching Freeman, and pursuing Tony. Fetelee's actions were due to the fact that someone had parked and blocked his parking stall. And all this after Lopez had relayed to Fetelee that none of her guests' cars were blocking his parking stall. Fetelee continued to consume alcohol and acted irrationally in grabbing Lincoln's money. These actions are not wholly independent or irrelevant to Fetelee's subsequent unprovoked assault on the two Micronesian men. It is evidence that was necessary to complete the story for the jury.

### C. It was within the circuit court's discretion to permit the State to reopen its case in chief.

 Fetelee argues that the circuit court abused its discretion in permitting the State to reopen its case to present the testimony of Freeman on the issue raised in the motions in limine hearing. The Hawai'i Supreme Court has held that, as a general matter, "permitting or disallowing a party to reopen its case for the purpose of submitting additional evidence is a matter within the discretion of the trial court and is subject to review for abuse of discretion." *State v. Christian,* 88 Hawai'i 407, 417, 967 P.2d 239, 249 (1998) (quoting *State v. Kwak,* 80 Hawai'i 297, 304, 909 P.2d 1112, 1119 (1995)); *see also Territory v. Kimbrel,* 31 Haw. 81, 89 (1929) ("Before submission of the case to the jury it is within the discretion of the presiding judge to reopen the case and to admit further evidence introduced by the prosecution or by the defendant or by both."); *Territory v. Rutherford,* 41 Haw. 554, 558 (1957) ("[P]ermitting or disallowing a party to reopen its case for the purpose of submitting additional evidence

is a matter within the discretion of the trial court[.]").

In the instant case, on April 19, 2005, the circuit court held a motions in limine hearing, at which Lopez testified as to the incident in her apartment. At the conclusion of her testimony, the circuit court wanted to hear additional testimony from Freeman, who, the State proffered, would provide testimony as to Fetelee's behavior/mood and a time frame connecting the two incidents. However, at the time of the hearing the State was unable to locate Freeman. The circuit court reserved its ruling until Freeman could be located and proffer testimony. On April 25, 2005, the circuit court suspended the trial proceedings and allowed Freeman to testify to the incident in Lopez's apartment. Fetelee's counsel availed himself of the opportunity to cross-examine Freeman. After Freeman's testimony, the circuit court ruled on the State's Motion. Accordingly, the circuit court's decision to allow the State to reopen its case did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the substantial detriment of Fetelee.

### D. The circuit court did not commit plain error in failing to instruct the jury, prior to the trial testimony of Lopez and Freeman, on the limited purpose of their testimony.

 Fetelee argues that the circuit court erred in failing to instruct the jury with a limiting instruction prior to Lopez's and Freeman's testimonies regarding the incident in Lopez's apartment. "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." HRE Rule 105 (emphasis added). "As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error. This court will apply the plain error standard of review to correct errors which seriously af-

fect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks, citations, and brackets omitted). Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted).

In his opening brief, Fetelee conceded that he did not request a specific limiting instruction prior to the trial testimonies of Lopez and Freeman. At the close of evidence, Fetelee did not submit a limiting instruction. It was the State, and not Fetelee, that submitted the limiting instruction regarding the incident in Lopez's apartment, and the circuit court accepted the State's limiting instruction, as modified by Fetelee's counsel. The circuit court did not commit plain error because during its final instruction of the jury, the court gave a limiting instruction. The fairness, integrity, or public reputation of the judicial proceedings or any substantial rights of Fetelee were not seriously affected by the failure of the circuit court to give a limiting instruction before Lopez and Freeman testified.

### IV.

The Judgment of Conviction and Sentence filed on August 3, 2005 in the Circuit Court of the First Circuit is affirmed.